**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

**UNITED STATES OF AMERICA** | **CASE NO. 3:25-CR-00082-01**

**VERSUS** | **JUDGE TERRY A. DOUGHTY**

**DONALD KELLY (01)** | **MAG. JUDGE KAYLA D. MCCLUSKY**

**MEMORANDUM ORDER**

Before the Court is a Motion in Limine [Doc. No. 74] filed by the United States of America ("the Government"). Defendant, Donald Kelly ("Defendant"), opposes the Motion [Doc. No. 79], and the Government filed a reply [Doc. No. 80]. For the following reasons the Motion is **GRANTED**.

## I. Background

A confidential informant ("CI") allegedly informed the Government that they could buy methamphetamine from Defendant.[1] So, on April 2, 2024, federal agents had the CI contact Defendant via Facebook to set up a controlled purchase.[2] The CI waited for Defendant in a parking lot that is, allegedly, a block away from Defendant's house.[3] The agents allegedly observed Defendant drive to his house, go inside for a moment, come outside, and then drive to the parking lot to meet the CI.[4] Defendant allegedly sold the CI 112 grams of methamphetamine and then went home.[5]

[1] [Doc. No. 74, p. 1].
[2] [Id.].
[3] [Id.].
[4] [Id.].
[5] [Id.].

Based on these observations, investigators sought—and obtained—a search warrant for Defendant's house.[6] On April 3, 2024, the day after the controlled purchase, the agents searched Defendant's house and allegedly found "two baggies of methamphetamine floating in the toilet and, in and behind a dresser in [Defendant's] bedroom, two handguns and $23,700 in cash, $560 of which was 'buy money' from the day before."[7] Defendant allegedly conceded that the drugs were his, but only because he uses it and not because he sells it.[8]

The Government indicted Defendant on April 2, 2025, on one count of distribution of methamphetamine (in violation of Title 21 United States Code, Section 841(a)(1) and (b)(1)(A)(viii)), one count of possession with the intent to distribute methamphetamine (in violation of Title 18 United States Code, Section 841(a)(1) and (b)(1)(B)(viii)), one count of possession of firearm by a prohibited person (in violation of Title 18, United States Code, Section 922(g)(1)), and one count of possession of a firearm during a drug trafficking offense (in violation of Title 18 United States Code, Section 924(c)(1)(A)).[9] Defendant's trial is set for August 10, 2026.[10]

On June 26, 2026, Defendant filed his List of Foreseeable Issues, noting that he "intends to raise the affirmative defense of entrapment."[11] The Government, in this Motion, argues the Court should require that Defendant make a *prima facie* showing of entrapment before allowing him to raise the defense at trial.[12]

---

[6] [Id. at pp. 1–2].
[7] [Id. at p. 2].
[8] [Id.].
[9] [Doc. No. 1, pp. 1–2].
[10] [Doc. No. 55, p. 1].
[11] [Doc. No. 57, ¶ 17].
[12] [Doc. No. 74].

The parties briefed all relevant issues, and the matter is ripe.

## II. Law and Analysis

### A. Motion in Limine Standard

Motions in limine are well-established pre-trial motions that play an important role. They prohibit opposing counsel from "mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds." *Vaughn v. Hobby Lobby Stores, Inc.*, 539 F. Supp. 3d 577, 582 (W.D. La. 2021).[13]

Motions in limine are, however, frequently made abstractly and in anticipation of a "hypothetical circumstance" that may never develop at trial. *Collins v. Wayne Corp.*, 621 F.2d 777, 784 (5th Cir. 1980). Therefore, they should "rarely" be used to "exclude broad categories of evidence, as the court is almost always better situated to rule on evidentiary issues in their factual context during trial." *Luv N' Care v. Laurain*, No. 16-777, 2021 WL 3440623, at *6 (W.D. La. Aug. 5, 2021). Instead, courts should only exclude evidence that is "clearly inadmissible on all potential grounds." *Rivera v. Robinson*, 464 F. Supp. 3d 847, 853 (E.D. La. 2020). Finally, a ruling on a motion in limine is not an ultimate ruling on the admissibility of the evidence, and the Court may alter a prior ruling on admissibility as the case unfolds. *See Luce v. United States*, 469 U.S. 38, 41–42 (1984).

### B. Merits

[13] All internal citations, quotation marks, and footnotes in case cites are omitted unless otherwise noted.

To prove "the defense of true entrapment, a defendant must make a prima facie showing of (1) his lack of disposition to commit the offense and (2) some governmental involvement and inducement more substantial than simply providing an opportunity to commit the offense." *United States v. Macedo-Flores*, 788 F.3d 181, 187 (5th Cir. 2015). Predisposition "focuses upon whether the defendant was an unwary innocent or, instead, an unwary criminal who readily availed himself of the opportunity to perpetrate the crime." *Id.* (quoting *Mathews v. United States*, 485 U.S. 58, 63 (1988)). "In examining a defendant's predisposition to commit the offense," courts "look at, *inter alia,* (1) the defendant's eagerness to participate in the transaction, and (2) the defendant's ready response to the government's inducement offer." *Id.* The Fifth Circuit holds that a "lack of predisposition can appear from, for example, lack of prior interest or experience related to the crime, significant hesitation or unwillingness, or attempts to return discussion to lawful conduct." *Id.* at 188. "Where a defendant promptly avails himself of a criminal opportunity, it is unlikely that his entrapment defense warrants a jury instruction." *Id.* (quoting *Jacobson v. U.S.*, 503 U.S. 540, 550 (1992)) (citation modified). And inducement "appear[s] when government agents persist in encouraging criminality after a defendant rejects overtures." *Id.*

"Only after the defendant has made a prima facie showing of entrapment by showing both elements—lack of predisposition and governmental inducement—is the defendant entitled to an entrapment instruction by the court." *Id.* Then, "the burden [shifts] to the government to prove beyond a reasonable doubt that the defendant was disposed to commit the offense before the government first approached him." *Id.*

Here, Defendant proves neither. First, Defendant submits no evidence to support his position that he lacked predisposition to commit the charged offenses. Defendant argues that he was not predisposed to drug-dealing because the lead investigator, Anthnoy Cowan ("Cowan"), "possessed no independent evidence that" Defendant dealt drugs until the CI said so.[14] Defendant also notes that the Government's basis to show Defendant's predisposition relies on the Government-induced controlled purchase and Defendant's prior federal criminal history.[15] Defendant contends that he has evidence to prove both at trial,[16] but neither says what that evidence is nor attaches it to his Opposition to the Government's Motion.

The Court is unconvinced by Defendant's arguments. For starters, Defendant does not identify or submit any evidence that supports his argument that can prove he was not predisposed to commit the alleged crimes. And recall, Defendant has the burden of proof to show evidence that supports his entrapment theory before he is entitled to use that theory at any point in the trial. *Macedo-Flores*, 788 F.3d at 188. What's more, Defendant is incorrect in framing the Government's basis for arguing that he was predisposed to commit the charged crime. The Government only brought up Defendant's prior conviction and connected sentence as evidence they *could* rely on if the Court denies this Motion.[17] As for Defendant's arguments about the controlled purchase, the Court turns to that next when it analyzes why Defendant did not meet the inducement prong for entrapment.

---

[14] [Doc. No. 79, p. 4
[15] [Id.].
[16] [Id. at p. 5].
[17] [Doc. No. 74, p. 6].

Additionally, when agents searched Defendant's house, they allegedly found "two baggies of methamphetamine floating in the toilet" and, in Defendant's bedroom, "two handguns and $23,700 in cash, $560 of which was 'buy money' from the day before."[18] This evidence, while not dispositive, together with Defendant's prior conviction and sentencing, rebut Defendant's arguments that he was not predisposed to commit the charged offenses. In sum, Defendant has not met his burden of proof on the first prong for entrapment, and the limited evidence rebuts his arguments.

Second, Defendant also cannot prove that the Government induced him into committing the charged offenses. Defendant argues the Government induced him into selling the CI drugs because (1) they asked the CI to follow up with him after he did not show up at the deal location an hour after the agreed time, (2) they pressured the CI to keep Defendant engaged and interested in selling the drugs, and (3) Cowan's conversation with the CI suggested that the CI worked for money, to get charges dropped, or other known benefits.[19] None of the arguments are convincing.

Start with the argument about agents asking the CI to follow up with Defendant. True, Defendant was a no-show for around an hour after the agreed time. That on its own, however, does not hint that Defendant affirmatively rejected the opportunity to engage in the alleged conduct with the CI. And under *Macedo-Flores*, Defendant needs to show that the Government persistently encouraged him to engage in criminal acts after he clearly rejected doing so. *See id.* Defendant likewise offers no evidence to suggest that before the agents requested the CI to keep him engaged,

---

[18] [Id. at p. 2].
[19] [Doc. No. 79, pp. 3–4].

he told the CI he was not interested in selling the CI drugs. Finally, the alleged statements between the CI and Cowan about why CIs work does not rise to the level of persistent attempts by the Government to get Defendant to commit a crime. That statement wasn't even made to Defendant, so it is unclear how it could coax him.

Accordingly, since Defendant has not shown that he was not predisposed to commit the charged crime and that the Government induced him into committing said crime, the Government's Motion is **GRANTED**.

## III. Conclusion

For the above-stated reasons,

**IT IS ORDERED** that the Government's Motion in Limine [Doc. No. 74] is **GRANTED**. Defendant may not make any statement related to the entrapment defense during the opening and closing statements or anywhere else in the trial.

MONROE, LOUISIANA, this 3rd day of August 2026.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE